UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEFFREY E. WALKER,<br><br>    Plaintiff,<br><br>v.<br><br>MINA BESHARA; FNU LUU; DAVID ROBLESS; AUDRA KING; JOSH BERGER; FNU STEVEN; REBECCA KORNBLUSH,<br><br>    Defendants. | Case No. 1:20-cv-01050-HBK (PC)<br><br>FINDINGS AND RECOMMENDATIONS TO DENY PLAINTIFF'S MOTIONS FOR TEMPORARY RESTRAINING ORDERS AND FOR INJUNCTION OR RESTRAINING ORDER[1]<br><br>(Doc. Nos. 11, 12, and 18)<br><br>THIRTY DAY OBJECTION PERIOD<br><br>CLERK TO ASSIGN TO DISTRICT JUDGE |

Before the Court are several motions for temporary restraining orders and one motion for an injunction or a restraining order, filed on February 12, 2021, February 16, 2021, and most recently on April 12, 2021, respectively. (Doc. Nos. 11, 12, and 18). While the allegations in each motion vary slightly, generally Plaintiff seeks a temporary or preliminary injunctive relief to enjoin several correctional officials from working in his assigned unit at Coalinga State Hospital. (*See generally* Doc. No. 11 at 1). For the reasons stated below, the undersigned recommends each of the motions be denied.

---

[1] The undersigned submits these factual findings and recommendations to the District Court pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302 (E.D. Cal. 2019).

1

# I. BACKGROUND

Plaintiff Jeffrey E. Walker, a civil detainee, initiated this action by filing a *pro se* 42 U.S.C. § 1983 Complaint on July 30, 2020, while detained at the Coalinga State Hospital. (Doc. No. 1). The then-assigned magistrate judge granted Plaintiff's motion for leave to proceed as a pauper. (Doc. No. 4).

Turning to Plaintiff's motions for temporary restraining order, or a preliminary injunction, on February 12, 2021, the court initially reviewed Plaintiff's first and second motions, and issued an order on February 23, 2021. (Doc. No. 14). Noting the allegations of suicide, danger of death, or imminent serious harm to themselves or others set forth in Plaintiff's first and second motions, the court directed the clerk to send a copy of the pleadings to the appropriate institutional officials at Coalinga State Hospital for use as the officials deemed appropriate. (Doc. No. 14). As a result of the notice provided to officials on or about February 23, 2021, Plaintiff filed his motion for clarification seeking expedited review on March 5, 2021, mainly addressing the court's order. (Doc. No. 15). As previously stated, the court addresses Plaintiff's March 5 motion by separate order.

**A. The Complaint**

In the complaint, Plaintiff names the following defendants: (1) Mina Beshara; (2) FNU Luu; (3) David Robles; (4) Audra King; (5) Josh Berer; (6) FNU Steven; and (7) Rebecca Kornbluh; (8) Treatment Team John and Jane Does; (9) Involuntary Medical Hearing John and Jane Does November- 2016; (10) Involuntarily Medical Hearing John and Jane Does- December 2016; and (11) David Avilla. (*Id.* at 1-2).

Plaintiff appears to have initiated this action as a civil detainee at Coalinga State Hospital, where he is receiving mental health treatment. (*See generally* Doc. No. 1). Plaintiff names the following defendants: (1) Mina Beshara; (2) FNU Luu; (3) David Robless; (4) Audra King; (5) Josh Berer; (6) FNU Steven; and (7) Rebecca Kornbluh; (8) Treatment Team John and Jane Does; (9) Involuntary Medical Hearing John and Jane Does November- 2016; (10) Involuntarily Medical Hearing John and Jane Does- December 2016; and (11) David Avilla. (*Id.* at 1-2). All claims appear to stem from incidents Plaintiff alleges occurred in 2016, approximately four years

prior to when plaintiff initiated this action, but were ongoing events during that time. (*See generally Id.*). The complaint is comprised of 34 pages and includes 103 separate number averments. The averments are disjointed, rambling and confusing and appear in a diary-like fashion detailing various unrelated incidents plaintiff experienced at different points in time with different staff, or other patients, at Coalinga State Hospital.

Although far from the model of clarity, it appears the incidents giving rise to the cause of action stem from Plaintiff being forcefully medicated, when defendants instead could have housed Plaintiff in a single cell, or being subjected to direct line of sight observations by male officials around-the-clock. (Complaint at 5-7, 10, 17) (alleging Plaintiff "could not get any sleep" with male staff observing him). Plaintiff claims defendants knew he "had a history of flash backs and reoccurring remembrance of past sexual abuse if left in certain predicaments resulting in Plaintiff being taken out to the hospitals on numerous occasions for sexual exams." (*Id.* at 6). Plaintiff claims that he has suffers from post-traumatic stress disorder from a previous sexual assault in prison, which "triggers" him when he has male staff watching him, or when he sees Hispanic residents or staff, or gay staff, and causes him to experience anxiety attacks, chest pains, paranoia and results in him being administered psychotropic drugs against his will or taken to outside hospitals for examinations. (*Id.* at 7, 15). Plaintiff acknowledges that when he was housed in a single cell, he was not triggered and did not require forced medication, or to be transported for rape examinations, for a three-year period. (*Id.* at 20). Plaintiff includes details of his counseling sessions or "panel" interviews in his Complaint, admitting that a state court order required that he be involuntarily medicated, and that has a diagnosis of paranoia, bi-polar disorder and other mental health issues. (*Id.* at 23-25). As relief, Plaintiff seeks monetary damages and any other relief the Court deems appropriate. (*Id.* at 31).

**B. The Motions for Temporary Restraining Orders and Preliminary Injunctions**

The allegations in Plaintiff's first motion for a temporary restraining order are those alleged in the Complaint. In the first motion, Plaintiff asks that the court issue a restraining order to keep the following officials away from his assigned unit number 9: (1) David Robles; (2) Ed Fernandez; (3) Tomas Cervantes; (4) Arseniz Guiterez, who Plaintiff identifies as the Unit

| | |
|---|---|
| 1 | Supervisor; (5) David Avila; (6) Jason Montijo; (7) Sal Solano; (8) "Dr. . . Psychiatris [sic] from |
| 2 | any contact as Dr. in Unit #9 or at all"; (9) "Steven G. Nurse Unit #9"; and (10) Jose Loeza. |

Supervisor; (5) David Avila; (6) Jason Montijo; (7) Sal Solano; (8) "Dr. . . Psychiatris [sic] from any contact as Dr. in Unit #9 or at all"; (9) "Steven G. Nurse Unit #9"; and (10) Jose Loeza. (Doc. No. 11 at 1). In the most recent motion, Plaintiff adds another three individuals to the proposed "no-contact list" including: (10) Christ Beller; (11) Rudy Chavez; and (12) Rudy Price. (Doc. No. 18 at 1).

In pertinent part, Plaintiff claims he has a "documented mental health history of P.T.S.D. not to be placed with certain people who abused me or any situations like the [line of sight] with males from past prison sex abuse w[h]ich could trigger me to become violent or cause re-occurrence of those memories w[h]ich is cruel and unusual punishment." (Doc. No. 11 at 3). He further contends that he is "high risk medical with high blood pressure, an anxiety attack could kill [him]." (*Id.*). In his second and third motions, Plaintiff alleges that certain defendants have threatened him with retaliation for initiating a lawsuit against him, but not specify the nature of the retaliation. (Doc. No. 12 at 4; Doc. No. 18 at 1). Plaintiff states that initiating the instant action against defendants has caused him "panic" as he remembers "past prison abuse, sexual assault, excessive force." (*Id.*). Plaintiff acknowledges his P.T.S.D "could be a recipe for a danger" if placed in a situation with the abuser. (*Id.*). And, again contends, that he has high blood pressure, so an anxiety attack could kill him. (*Id.* at 4-5). Plaintiff is concerned his inmate job may be taken away from him in retaliation for filing the instant action. (Doc. No 18 at 1-6).

## II. APPLICABLE LAW

Federal Rule of Civil Procedure 65 governs injunctions and restraining orders, and requires that a motion for temporary restraining order include "specific facts in an affidavit or a verified complaint [that] clearly show that immediate, and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition," as well as written certification from the movant's attorney stating "any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b).

Temporary restraining orders are governed by the same standard applicable to preliminary injunctions, with the exception that preliminary injunctions require notice to the adverse party. *See Cal. Indep. Sys. Operator Corp. v. Reliant Energy Servs., Inc.,* 181 F.Supp.2d 1111, 1126

4

(E.D. Ca. 2001); *see also* Fed. R. Civ. P. 65(a). Local Rule 231, however, requires notice for temporary restraining orders as well, "[e]xcept in the most extraordinary of circumstances," and the court considers whether the applicant could have sought relief by motion for preliminary injunction at an earlier date. L.R 231 (a)-(b) (E.D. Ca. 2019). A temporary restraining order "should be restricted to serving [its] underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer." *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70*, 415 U.S. 423, 439 (1974).

A temporary restraining order, is "an extraordinary remedy" and may be issued only if Plaintiff establishes: (1) likelihood of success on the merits; (2) likelihood of irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his/her favor; (4) that an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Plaintiff bears the burden of clearly satisfying all four prongs. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). A TRO will not issue if Plaintiff merely shows irreparable harm is possible – a showing of likelihood is required. *Id.* at 1131.

The injunctive relief an applicant requests must relate to the claims brought in the complaint. *See Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.*, 810 F.3d 631, 633 (9th Cir. 2015) ("When a Plaintiff seeks injunctive relief based on claims not pled in the complaint, the court does not have the authority to issue an injunction."). Absent a nexus between the injury claimed in the motion and the underlying complaint, the court lacks the authority to grant Plaintiff any relief. *Id.* at 636.

The Prison Litigation Reform Act ("PLRA") imposes additional requirements on prisoner litigants seeking preliminary injunctive relief against prison officials. In such cases, "[p]reliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2); *Villery v. California Dep't of Corr.*, 2016 WL 70326, at *3 (E.D. Cal. Jan. 6, 2016). As the Ninth Circuit has observed, the PLRA places significant limits upon a court's power to grant preliminary injunctive relief to inmates,

and "operates simultaneously to restrict the equity jurisdiction of federal courts and to protect the bargaining power of prison administrators—no longer may courts grant or approve relief that binds prison administrators to do more than the constitutional minimum." *Gilmore v. People of the State of California*, 220 F.3d 987, 998-99 (9th Cir. 2000). The court's jurisdiction is "limited to the parties in this action" and the pendency of an action "does not give the Court jurisdiction over prison officials in general or over the conditions of an inmate's confinement unrelated to the claims before it." *Beaton v. Miller*, 2020 WL 5847014, at *1 (E.D. Cal. Oct. 1, 2020). If a prisoner has been transferred, any sought injunctive relief against the previous facility becomes moot if the prisoner "has demonstrated no reasonable expectation of returning to [the prison]." *Johnson v. Moore*, 948 F.2d 517, 519 (9th Cir. 1991); *Florence v. Kernan*, 813 F. App'x 325, 326 (9th Cir. 2020). Finally, state governments have "traditionally been granted the widest latitude in the dispatch of [their] own internal affairs." *Rizzo v. Goode*, 423, U.S. 362, 378 (1976) (citations omitted). This deference applies even more strongly when the court is asked to involve itself in the administrative decisions of a prison. *See Turner v. Safely*, 482 U.S. 78, 85 (1987); *Sandin v. Conner*, 515 U.S. 472, 482-83 (1995).

### III. DISCUSSION

Having reviewed Plaintiff's motions, the court does not find that Plaintiff has satisfied his burden to show that immediate and irreparable injury, loss, or damage will result to him before officials at Coalinga State Hospital can be heard, thus precluding a temporary restraining order under Fed. R. Civ. P. 65 and Local Rule 231(a). Further, Plaintiff's allegations do not satisfy the requisite four elements necessary for issuance of a temporary restraining order, or a preliminary injunction.

Generally, Plaintiff's motions seek an order from the court directing which employees of Coalinga State Hospital can enter Plaintiff's assigned housing unit. *Supra* at 3-4. Such an order would be intrusive into the daily operations at Coalinga State Hospital and precisely those restrained by case law. *Bell v. Wolfish*, 441 U.S. 520, 546 (1979) (maintaining institutional security and preserving internal order and discipline are central to all other corrections goals). While such relief may be necessary in extraordinary cases, Plaintiff has not satisfied the burden

here, especially when considering the allegations in the motions and the complaint wherein Plaintiff acknowledges at an unspecified time, he became argumentative with staff and was within arm's length. *Supra* at 3 (citing Doc. No. 1 at 8).

Further, Plaintiff does not appear likely to succeed on his complaint. Liberally construed, Plaintiff's Complaint appears to allege that the failure to house plaintiff in a single cell and instead being placed on direct line of sight observation caused him to experience P.T.S.D., which int turn resulted in him being forced medication. (*See* generally Doc. No. 1). Due to numerous deficiencies in the Complaint, the court has issued a § 1915A screening order directing plaintiff to file an amended complaint. The allegations in plaintiff's motions are directed at preventing retaliatory acts from occurring based on the filing of the instant lawsuit. The allegations in all motions are directed to which staff can enter Plaintiff's dorm in attempt to restrict nearly a dozen staff's access to Plaintiff's dormitory area. Thus, the allegations in the motions are not directly related to the issues in the complaint.

Plaintiff does not provide specific facts about how he will suffer immediate or irreparable harm. Plaintiff does not allege that he has been physically harmed, instead he repeatedly alleges he suffers from P.T.S.D and does best when housed in a single dormitory. Similarly, Plaintiff's motion wholly fails to address whether the balance of equities and the public interest favor granting injunctive relief, especially when they tip in favor of state prison officials and internal affairs such as more than a dozen staff employment assignments. Nor does Plaintiff certify in writing what efforts were made to serve the adverse party with notice, or why notice should be excused. Based on the foregoing reasons, the undersigned recommends the district court adopt these findings and recommendations and deny Plaintiff's motions.

Accordingly, it is **ORDERED**:

The Clerk of Court is directed to assign a district judge to this action.

It is further **RECOMMENDED**:

Plaintiff's motions for a temporary restraining order and/or preliminary injunction (Doc. Nos. 11, 12, 18) be **DENIED**.

**NOTICE TO PARTIES**

These findings and recommendations will be submitted to the United States district judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within thirty (30) days after being served with these findings and recommendations, a party may file written objections with the court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: May 27, 2021

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE